in this case. Thank you, Your Honor. Good afternoon. Ray Cardozo representing Muscle Beach Nutrition and ThermoLife International. I'll aim to reserve two minutes for rebuttal. In thinking about whether this complaint suffice the state meet the standing requirements of the Lanham Act, the place to start is with this court's controlling precedent in the traffic school case, which was focused exactly on the issue of standing under the Lanham Act. And this court was crystal clear that the plaintiff does not need to establish actual lost sales. And the exact quote is page 826. Because a likely injury is far less certain than an actual injury, plaintiffs need not prove the latter to establish the commercial injury necessary for a Lanham Act standing. The court went on to explain that you don't have to prove actual lost sales or anything like that, and instead rely on quote, probable market behavior. Because this is a situation where the defendant has corrupted the market. And so, so you have to show you're a direct competitor, though. And if we look at Muscle Beach first, did you have any evidence of Muscle Beach products being competitors with the BPI products? Yeah, absolutely, Your Honor. So if you look at excerpts of record 261, 262, the allegations at paragraphs 133 to 138, what you'll see in those allegations is that Muscle Beach and BPI sell at the same level. So it's not, they're both selling direct to customers. But in the website shots that you offered, I didn't see any of the Muscle Beach products. Yeah, the website shots were Thermalife allegations. 133 to 138 are the Muscle Beach allegations. So for those... And they're just conglutinary, right? I mean, what do you have as a specific allegation that shows that they're direct competitors? They're selling direct to the same customers. They're touting the exact same benefits, muscle growth, muscle endurance, and recovery. And they're not just selling in the same sports nutrition market. They're selling in the same sub-niches, pre-workout and muscle building. But those products, one product, creatine is for those who are interested in muscle building. The other is a pre-workout product. Those sub-niches of the exact same sports nutrition market sold using the exact same things. This is going to help you build muscles. This is going to help you recover faster. Those allegations that appear there easily at least permit an inference that they're competitors. All foods that say low calorie compete with each other? All foods that say this will help you, this will help you lose weight in three specific ways. And it's the exact same three ways. I mean, it's not just low calorie. It's three specific things that will help you do. And all foods that are looking for people, this is the thing you want to take for your morning walk. All foods will help you lose weight if you take this during your morning walk. This is much more specific. And again, this doesn't have to be the only permissible inference. It just needs to be a plausible inference. The requirement of proving the case or establishing whether they are direct competitors comes later. To say that products that are sold not just in the same market, but two specific sub-niches touting three specific product benefits. And the other thing you have to remember the nature of the false allegations, your honor. They specifically separated their products from products like Muscle Beach through the false advertising. They said their products are better than other amino acid supplementation products because they have these unique qualities that no one else has. What that's like is Diet Coke saying we're better than Pepsi because only our no calorie product has these benefits. And then as it turns out, they're using the exact same ingredients as Diet Pepsi. They specifically separated themselves from Muscle Beach and other mere amino acid pre-workout products because they supposedly had this unique bonded chain technology, which was just made up. It was a lie. So that's on Muscle Beach. Thermolife, I would commend your honors to compare paragraphs 115 to 122, which are the descriptions of the Thermolife component product Xtend with paragraphs 34 to 61. 34 to 61 are the allegations of BPI's advertising. They specifically separated their product from Xtend, which is the second leading seller in the market. So in Lexmark, there was a one-to-one. If you lose a sale, it's going to be a loss of one of these chips that's in the ink cartridges. There are basically only two competitors, so a loss to one goes to the other. You're supplying ingredients to people who are selling the actual supplements. Have you given us anything about how the licensing is done or whether they pay a fee for each product sold that would tell us that Thermolife is in a sort of one-to-one relationship? Yeah, the allegation and the complaint is every one, every time, every single sale of Thermolife component product produces licensing revenue for Thermolife. So that's an attenuation, no link. It's just like it's static control. If the competitive product is, if it's averted from a competitive product, it's not just the competitor that loses. Thermolife loses because they get a license on every single sale. That's what's meant by one-to-one. And what paragraph is that? That appears at, I'll give that to you in my rebuttal, Your Honor. One thing, and I should point out that what the district court did was flatly contrary to what this court said in its NewCal decision, you can do on a 12-6 motion. The reasons it gave are weighing of the allegations, not determining if they permitted inference. NewCal reversed a 12-6 by saying, you can't rely on this unless this is a matter of law ground to reject the allegations. We've got screenshots for the Thermolife products that show retailers putting these products in the same category, putting them side by side. You're looking for a muscle builder. Here's the BPI product and right next to it is the Thermolife product. That's like walking into a grocery store and under the grocery store's label of beer, you have Budweiser and Corbs right next to each other. The retailer has considered them competitors and put them side by side. The distinctions, time for rebuttal. You're down to two minutes. Okay. Thank you, Your Honor. I'll get you that site. You may begin whenever you're ready, except that you're muted. I'll start again. Good afternoon, Your Honors. May it please the court. My name is Dan Silverman and I represent Appellee BPI Sports. The district court's dismissal of appellant's complaint should be affirmed for three independent reasons. The first reason is that appellants have failed to plead any facts showing they are direct competitors with BPI with respect to the branch chain amino acid products at issue in this case. As such, they cannot rely upon the presumption of injury articulated in the traffic school case that Mr. Cardozo just referred to as the seminal case. That case is easily distinguishable because in that case, the court had found direct competition and there was a presumption of injury. But even if this court were to find direct competition, and for a variety of reasons, I'll explain why the district court was correct that they're not direct competitors. Even still, the traffic school case and the Lexmark case are easily distinguishable such that there still should be no presumption of injury. As Your Honor pointed out, the traffic school case, I'm sorry, the Lexmark case dealt with a one-to-one relationship. Lost sale, sale gained. Similarly, in the traffic school case, the court found ample evidence of direct competition, therefore presiding for finding a presumption of injury because there was a limited number of driver's education courses and the court found that likely sales by one were at the expense of the other. Nothing could be further from the truth here because even according to Appellant's own allegations, there are hundreds of supplement products on the market that tout similar generic broad performance claims like athletic performance, endurance, muscle building, things like that. And if you do the search, you'll find hundreds. So those cases, the traffic school and Lexmark cases are easily distinguishable even if you were to find direct competition. But they're clearly not competitors and I'll get into all the reasons in a second. But a second independent reason that is fatal to the complaint is that there's a failure to allege any lost sales. In fact, counsel essentially concedes that they have no evidence or proof of any lost sales in this case and therefore he's trying to rely upon a presumption which is only gotten to if you find direct competition. So as a district court held correctly, there's no evidence of actual commercial injury and that alone is fatal to the complaint. A third independent reason that counsel doesn't touch upon is that they failed to, Appellants failed to plead that consumers were actually deceived by any purported misrepresentations by BPI. And as this court held in the Harper House versus Thomas Nelson case, actual evidence of injury resulting from deception is an essential element of plaintiff's Lanham Act case. So now let me go into the first issue, the first reason dismissal is appropriate. They're not direct competitors. I want to first touch on Thermolife and then I'll touch on Muscle Beach. There's four reasons for each. First is Thermolife, counsel doesn't address. They're not even in the same level in the dietary supplement chain. You have Thermolife, which is an ingredient supplier and patent licensor. You have BPI Sports that sells finished good supplements. And as multiple district courts held in this circuit and found non-direct competitors, if they're in a different level than the dietary supplement. Well Lexmark, the chip supplier was a different level too. So it could be a different level if it's a one-to-one competition, if it's a one-to-one loss of sale for each sale, right? If it's a one-to-one and again here we don't have anything close to a one-to-one. But so I mean he's saying that they make some fee, licensing fee for every bottle of product sold. If that's true and they could show direct competition, why couldn't they meet the Lexmark standard? Because he's not, well first of all because there's hundreds of products on the market making similar performance claims. It's not a one-to-one or even remotely close to a one-to-one. And secondarily, Thermolife hasn't alleged any decline in any sales it's made. It hasn't alleged any loss of licensees. It hasn't alleged any BPI's alleged false advertising that they that license source has switched from a Thermolife source product to a BPI product. And in fact they tout the fact that their licensees are top sellers which completely undermines their claim of any injury or lost sales or anything to that effect. So if we agree with you about all those failures of the complaint, should they have been given leave to amend? No your honor and here I certainly anticipated that. They've actually been given three bites at the apple on this and it's basically futile at this point. First they filed the complaint. We filed a motion to dismiss. The court granted the motion gave them leave to amend. They refiled the complaint with a much more beefed up complaint. We filed a motion to dismiss and the day before their opposition was due they voluntarily dismissed the complaint. Then months and months later they decided to file a new complaint in Florida because there was a case proceeding in Florida that BPI had filed against Thermolife. They said well I don't I'm going to pick up my my ball and run to Florida because I don't like what's happening here in Arizona. I see the writing on the wall they file in Arizona. We argue forum shopping the case gets transferred back to here. So they've had three bites at the apple and they just simply cannot plead it. They can't. I'm sorry let's just pause the clock for a second. I will we don't seem to have Judge Lasnik. Okay Judge Lasnik's back. Yeah okay sorry we can start the clock and you can proceed. Sure. So they've had three bites at the apple and they just simply cannot meet the burden. They can't show the direct competition. They can't show for Muscle Beach. Your honor asked about Muscle Beach. Muscle Beach products there's no allegation at all because it's because it's not true. They're not sold in proximity at all to BPI's products. There's no allegations or evidence of any testimonial evidence. There's no evidence of consumer survey. As traffic school said is required. In fact the only evidence of any consumer even comparing a BPI product to that of a Thermalife licensee is on an Amazon review in which a consumer compared the flavor of a BPI product is that the flavor is better. But clearly as the district court correctly held that's not sufficient. That's not comparing products and based upon any BPI advertising claim. That's just a flavor a flavor issue and that doesn't rise to the level necessary to show direct competition. And there's other reasons why they're not direct competitors as well. The subjective screenshots that council talked about that your honor asked about. Again those were self-selected by Thermalife and there's hundreds of them. Nothing shows that there's no allegations, no evidence, no testimonial evidence, survey evidence showing that consumers consider them substitutes. And in fact the beer analogy that council gave is completely misguided comparing Budweiser to Coors. A more appropriate analogy in this case is Jack Daniel's whiskey compared to Coors or Budweiser. Certainly they're both alcohols. Certainly they have similar effects especially if you drink too much. But consumers certainly know the difference between whiskey and beer and they're not sold in proximity to one another. That's exactly the situation we have here in which these products are not sold in proximity to one another in terms of Muscle Beach products and the Thermalife source ingredient products that it licenses or the licensees sell. Those are sold along with hundreds of others. Again we don't have anywhere remotely close to the traffic school or Lexmark one-on-one relationship. And then again with respect and so you know for each of those reasons clearly Thermalife is not a competitor. Muscle Beach isn't a direct competitor. They've not demonstrated they make similar broad performance claimed athletic performance and other similar claims. But these products are very different. Branched chain amino acids have specific ingredients leucine, isoleucine, and valine that are specifically yes their performance but that's a different type. They're a recovery client. Nobody's going to buy a branched chain amino acid product that's considering buying creatine. Creatine is for muscle building and nitrates is for vacillation of your growth of your veins, for pumping you up. It's for building muscle mass. Branched chain amino acids aren't for any of those things. They're for recovery and therefore for lean muscle mass or lean muscle building. So they're completely different and in fact the reason why that's exactly why appellants aren't able to come up with anything to show consumer survey or any evidence because they're not no consumers are going to confuse the two or substitute the two. Secondarily, Muscle Beach has demonstrated absolutely no evidence of lost sales or decreased sales let alone any specific lost sales that they lost to BPI. They've alleged nothing of that sort and also there's no allegations of comparative advertising which was critical in the traffic school case. In fact traffic school specifically found that comparative advertising is the paradigm example of competitive advertising and we have no competitive comparative advertising in this case and again Muscle Beach is not sold in any close proximity. So for that reason alone they're not direct competitors. It should be dismissed. Traffic school and Lexmark are entirely different even if the court were to find direct competition because there's still no presumption of injury given the relationship is not the one-on-one that was found in those cases. But secondarily an independent reason for affirming is that there's absolutely no evidence of lost sales. If they have lost sales either decreased licensing sales by Thermalife or lost sales by Muscle Beach they would have alleged it. They've had three opportunities to do so and they simply can't do it. And then a third independent reason for affirming the dismissal, I know I'm running out of time, is that there's no allegation of consumer deception. And so if there's no allegation of consumer deception as this court held in Harper House that's another reason that you must affirm the dismissal even though that wasn't the ground below this court can certainly affirm. So there's multiple reasons for affirming the dismissal. All this court has to do is find one and Thermalife has been around the block. They've sued multiple other companies. Compound Solution in which this court reversed is entirely distinguishable because in that case the court found that they were directly... We have you over your time so I think you need to wrap up please. I just was going to anticipate counsel's argument but I re-briefed it. Easily distinguishable. All the facts are very different. Thank you your honor. Thank you. I think you had about two minutes for rebuttal. Thank you your honor. I'm going to try to hit five points before my client forever loses its day in court. First, the site you were looking for is paragraphs 122 and 131 which explicitly alleges every sale that BPI stole from a Thermalife product harms Thermalife. Secondly... Does it say because they receive a single licensing fee for every product? I'm pulling it up now. It says it's harmed by it from every sale. So that's different right? That doesn't show one-to-one. I mean maybe if overall you lose sales you get less licensing fee the next year or something but that doesn't show it's one-to-one does it? Well I would urge the court to look at the only post Lexmark case that's been cited to this court by either party is this uh Central District of California case called Obesity Research which we cited in our opening brief 165 Fed 3937 which compares an ingredient supplier in the weight loss industry and it's not what uh Mr. Silverman's been describing it as. You just have to permit an inference of harm when the products one step removed in the chain you lose revenue and if there's this comparison you're separating your product from theirs by the by the virtue of the lies. Even if we had to prove lost sales which we don't look at paragraphs 128 to 129 which was a specific example of the customers comparing the two thermal life products and that's about the flavor right? How is that related to the advertising? The fact that he's comparing them the fact that he's comparing them around flavors you wouldn't compare them unless one's interchangeable with the other. So that that's oh Coke takes better than Pepsi the fact that you're comparing them shows the competitive products. You wouldn't say uh for in a workout magazine a workout review someone comparing them he's clearly clearly the fact that he's referring to the two together clearly shows that he's preferring one over the other. I mean couldn't it just be I like fruit punch and everyone knows that C4 fruit punch is a really good fruit punch flavor and now there's this other product that has a better even better fruit punch flavor. Right but in the specific context of a customer uh talking about workout products saying I like this one's flavor better that's a reason why he's preferring the product from the other but when you factor in the lie that the whole product couldn't be sold and its ingredients are fake the fact that he's making that comparison combined with the lie permits the inference plausible inference that's the test. Okay you're over your uh rebuttal time could you just wrap up one second again the the that these products are different and not the same look at the uh look at the screenshots another third-party retailer put them side by side in the same category. Clearly this is sufficient to permit an inference of injury the arguments about whether they're actually competitor uh whether they're actual lost sales this court has repeatedly held those are for evidentiary cases your honor. Thank you. Thank you both sides for the helpful arguments this case is submitted.
judges: WALLACE, FRIEDLAND, Lasnik